Affirmed and Memorandum Opinion filed September 30, 2010.

 

In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-09-00757-CV



 

Eaton Metal Products, L.L.C., Appellant

V.

U.S. Denro Steels, Inc. d/b/a
Jindal United Steels Corp.; Jindal Saw Limited; Jindal Enterprises; Saw Pipes
USA Inc.; and John McLaren,
Appellees

 



On Appeal from the 344th
District Court

Chambers County, Texas

Trial Court Cause No. 23322



 

MEMORANDUM OPINION

 

Eaton Metal Products, L.L.C. appeals from a grant of
summary judgment favoring appellees, U.S. Denro Steels, Inc. d/b/a Jindal
United Steels Corp.; Jindal Saw Limited; Jindal Enterprises; Saw Pipes USA
Inc.; and John McLaren.  Eaton sued appellees, alleging breach of two contracts
to produce steel plates of certain specifications.  Eaton also asserted claims
for fraudulent inducement and negligent misrepresentation related to formation
of the two alleged contracts.  On appeal, Eaton contends that the trial court
erred in (1) striking Eaton’s Second Amended Petition; (2) striking certain
summary judgment evidence; and (3) granting summary judgment favoring
appellees.  We affirm.

I.  Background

            Eaton
manufactures pressure vessels for oilfield applications.  The appellee corporations
manufacture steel.  Appellee McLaren is a salesperson employed by Saw Pipes,
Ltd.  In September 2004, Eaton’s purchasing manager, Ryan Falliaux, contacted
McLaren regarding the manufacture of steel plates to be used in constructing
pressure vessels for a customer named CDI.  To meet its contract obligations
with CDI, Eaton needed steel of a certain specified grade delivered by a
particular date.  According to Falliaux, McLaren stated that he had conferred
with metallurgists for the corporate appellees, who had told him that they
would be able to timely manufacture steel to meet Eaton’s requirements.  On
October 8, 2004, Eaton issued a purchase order to Saw Pipes, Ltd. for six steel
plates at $75,881.63, with delivery on November 26, 2004.  Saw Pipes, Ltd. then
issued a written acceptance of the order.

On December 21, 2004, Falliaux placed an additional
order for more steel plates with McLaren, this time to make pressure vessels
for Duke Energy.  No formal acceptance of this order was issued.  On December
28, 2004, McLaren informed Falliaux that the steel plates could not be produced
for either order.  Eaton then purchased the steel plates from another
manufacturer for less than the price that had been quoted by McLaren.

            On November 11,
2005, Eaton sued appellees.  In its First Amended Petition, Eaton alleged:  (1)
fraudulent inducement and negligent misrepresentation against McLaren; (2)
vicarious liability for McLaren’s conduct against U.S. Denro Steels; (3) breach
of contract against U.S. Denro Steels; (4) vicarious liability against Jindal
SAW Ltd., Jindal Enterprises, and SAW Pipes USA for McLaren’s conduct and U.S.
Denro Steel’s breach of contract; and (5) promissory estoppel against all of
the defendants.  Eaton further made various allegations aimed at piercing the corporate
veils of the corporate appellees.

            On March 17,
2009, appellees filed their First Amended Answer, alleging that Eaton had
“improperly named defendants” in its petition.  On April 28, 2009, the parties
entered into a Rule 11 agreement, setting several deadlines in the case, including
a June 5, 2009 deadline for pleading amendments.   Subsequently, on May 13,
2009, the court granted a motion for continuance, moving the trial date from
June 17 to August 10.  The court’s order, however, did not address whether the
Rule 11 agreement would remain in force.  Appellees filed a Second Amended
Answer on June 5, 2009, the last day to amend pleadings under the Rule 11 agreement. 
In this pleading, appellees further elaborated on their assertion that Eaton
had named the wrong defendants in its petition.  Over the next few weeks, the
parties entered into three additional Rule 11 agreements to extend deadlines
contained in the original Rule 11 agreement; however, at no point did the
parties agree to extend the deadline for amending pleadings.

On July 10, appellees filed their motion for summary
judgment, asserting both traditional and no-evidence grounds.  A hearing on the
motion was set for July 31.  Eight days before the hearing, on July 23, Eaton
filed its response to the motion for summary judgment and a second amended
petition.  In the latter pleading, Eaton added SAW Pipes, Ltd. as a defendant,
asserting that the failure to previously list that company was a misnomer. 
Further, Eaton altered its breach of contract allegations to drop them against
U.S. Denro Steels and raise them instead against Jindal SAW, Ltd., SAW Pipes
USA, Inc., and SAW Pipes, Ltd.  Eaton further added claims for common law fraud
as well as fraudulent non-disclosure against all of the defendants.  Lastly,
Eaton added claims for “Contorts (Combinations of Contract and Tort Claims).” 
In this category, Eaton alleged that the defendants committed negligence and
breached duties of good faith and fair dealing, and to perform the contract and
its conditions with care. 

Appellees responded with a motion to strike the Second
Amended Petition as untimely.  They also filed another motion to strike
portions of two affidavits, one by David Bennett and one by Ryan Falliaux,
attached as evidence to Eaton’s summary judgment response.  The court held a
hearing as scheduled on July 31, 2009 and concluded by granting summary
judgment favoring appellees.  Although the motions to strike were mentioned at
the hearing, the court did not expressly rule on these motions before granting
the summary judgment.  Thereafter, appellees specifically requested a written
ruling on the motions.  At an August 27, 2009 hearing, the judge stated that he
had read the motions before the summary judgment hearing and had taken them
into consideration as part of his ruling.   He then expressly granted the
motions and issued written rulings striking down the Second Amended Petition
and sustaining all but one of the objections to the summary judgment evidence.

II.  Striking the Second Amended Petition

            In its first
issue, Eaton contends that the trial court erred in striking its Second Amended
Petition as being untimely.  More specifically, Eaton argues that (1) the
amended petition was timely filed because the pleading deadline agreed to by
the parties did not survive the court’s continuance of the trial setting; (2) appellees
waived their arguments in their motion to strike by not obtaining a ruling
prior to the trial court’s grant of summary judgment; and (3) the petition was
proper as a trial amendment to conform the issues pleaded with those addressed
in the summary judgment proceedings.  We will address each argument in turn.

A.  Timeliness of the Second Amended Petition

As mentioned above, the parties entered a Rule 11
agreement setting various deadlines in the case, including one to amend
pleadings.  It is undisputed that Eaton filed its Second Amended Petition well
after the Rule 11 deadline for amending pleadings had passed.  Eaton maintains,
however, that the trial court’s granting of a continuance of the trial setting extinguished
the deadlines set in the parties’ Rule 11 agreement, and  because it was filed
more than seven days before the summary judgment hearing, its amended petition
would have been timely filed under the default time limits contained in Texas
Rule of Civil Procedure 63.  Tex. R. Civ. P. 63.  Generally, we consider a trial
court’s striking of pleadings under an abuse of discretion standard.  Torres
v. GSC Enters., Inc., 242 S.W.3d 553, 557 (Tex. App.—El Paso 2007, no pet.).
 However, a trial court has a ministerial duty to enforce a valid Rule 11
agreement.  Fortis Benefits v. Cantu, 234 S.W.3d 642, 651 n.58 (Tex.
2007); ExxonMobil Corp. v. Valence Operating Co., 174 S.W.3d 303, 309
(Tex. App.—Houston [1st Dist.] 2005, pet. denied).

In support of its position, Eaton cites H.B.
Zachry Co. v. Gonzales, 847 S.W.2d 246, 246 (Tex. 1993), and J.G. v.
Murray, 915 S.W.2d 548, 550 (Tex. App.—Corpus Christi 1995, orig.
proceeding).  The opinion in J.G. is primarily based on an
interpretation of the H.B. Zachry case.  See J.G., 915 S.W.2d at
550.  These cases, however, are distinguishable from the circumstances
presented here.  In H.B. Zachry, the Texas Supreme Court dealt with the
automatic exclusion of witnesses for failure to identify them more than thirty
days before the date of trial, as provided under former Rule 215(5) of the
Texas Rules of Civil Procedure (see now Rule 193.6).  847 S.W.2d at 246.  The
court explained that the automatic exclusion does not survive beyond the
resetting of the trial date if the new date is more than thirty days past the
original date.  Id.  In J.G., the Corpus Christi court also dealt
with the automatic exclusion of witnesses under former Rule 215(5); however,
the missed deadline in that case was not established by Rule but by the trial
court’s docket control order.  915 S.W.2d at 550.  In holding that the trial
court erred in excluding witnesses based on the original order’s deadline after
trial was reset, the Corpus Christi court stated broadly that “a trial
resetting has the effect of nullifying a discovery deadline set by a docket
control order.”  Id.

The present case involves deadlines set by the parties’
Rule 11 agreement, not deadlines established by rule or by the court’s own
docket control order.  Where parties have entered into a Rule 11 agreement
respecting pre-trial deadlines, courts view them as controlling.  See, e.g.,
EZ Pawn Corp. v. Mancias, 934 S.W.2d 87, 91 (Tex. 1996); Dallas County v.
Rischon Dev. Corp., 242 S.W.3d 90, 93-94 (Tex. App.—Dallas 2007, pet.
denied); Valence Operating, 174 S.W.3d at 309-11; Gammill v. Jack
Williams Chevrolet, Inc., 983 S.W.2d 1, 13 (Tex. App.—Fort Worth 1996, no
pet.); Beamon v. O’Neill, 865 S.W.2d 583, 585 (Tex. App.—Houston [14th
Dist.] 1993, no pet.).  Furthermore, the deadline established by the Rule 11
agreement in this case was a specific date, not a calculation of time based on the
ultimate trial date; thus, the changing of the scheduled trial date did not
alter the pleading amendment deadline, as it did in H.B. Zachry.  See
In re Carpenter, No. 05-08-00083-CV, 2008 WL 384569, at *1-2 (Tex.
App.—Dallas April 14, 2008, orig. proceeding) (distinguishing H.B. Zachry
on the ground that trial court’s scheduling order set pleading deadline based
on date of pretrial hearing and thus was not affected by rescheduling of trial
date).[1] 
Based on the foregoing, we find Eaton’s assertion that the trial court’s
granting of a continuance extinguished the deadlines contained in the Rule 11
agreement to be without merit.[2]

B.  Ruling on the Motion to Strike

Eaton next argues that appellees waived their motion
to strike Eaton’s Second Amended Petition by not obtaining a ruling on the
motion prior to the trial court’s grant of summary judgment.  In support of
this argument, Eaton makes repeated citation to two cases:  Goswami v.
Metropolitan Savings and Loan Association, 751 S.W.2d 487, 490 (Tex. 1988),
and Cluett v. Medical Protective Co., 829 S.W.2d 822, 825-26 (Tex.
App.—Dallas 1992, writ denied). 

In Goswami, the plaintiff filed an amended
petition just four days before the hearing date on the defendant’s motion for
summary judgment.  51 S.W.2d at 490.  The plaintiff did not request or obtain
leave of court to do so, and the defendant did not move to strike the
pleading.  Id.  The Texas Supreme Court held that where the trial court
indicates in its judgment that it considered all pleadings on file, and the
record otherwise does not indicate that the court did not consider the
late-filed pleading, leave of court is presumed.  Id.  Here, there was a
motion to strike on file, and in a hearing subsequent to the grant of summary
judgment, the trial judge stated that he had read the motion to strike prior to
the summary judgment hearing, took it into consideration during the hearing,
and in granting the motion to strike was “just memorializing what the Court
thought at that particular time.”  Thus, the record before us clearly indicates
that the trial court did not, in fact, consider the Second Amended Petition in
ruling on the motion for summary judgment.  Consequently, the rule in Goswami
does not apply in this case.

In Cluett, the Dallas Court of Appeals held
that the trial court did not err in considering claims in an amended pleading
as the basis for a grant of summary judgment, where the amended pleading was
filed after the motion for summary judgment was filed but several months before
the motion was actually considered by the court.  829 S.W.2d at 825-26.  Eaton
provides no explanation regarding how the analysis in Cluett supports
its position in the present case, and we can discern no basis for applying Cluett
here.

Without citation to authority, Eaton further argues
that it was prejudiced by appellees’ failure to obtain a timely ruling on the
motion to strike because Eaton was not placed on notice of the potential
untimeliness of its Second Amended Petition in time to correct the problem, e.g.,
by requesting leave to file the petition.  However, it is undisputed that
appellees filed their motion to strike before the summary judgment hearing and,
obviously, before the trial court’s ruling on the motion for summary judgment. 
Thus, Eaton was clearly placed on notice that appellees were challenging the
timeliness of the amended petition.  We find no merit in Eaton’s arguments
respecting the timing of the trial court’s ruling on appellees’ motion to
strike.

C.  Trial Amendment

Lastly, regarding the Second Amended Petition, Eaton
contends that the trial court erred in not permitting the petition as a trial
amendment under Texas Rule of Civil Procedure 66.  Tex. R. Civ. P. 66.[3] 
However, Eaton does not point to any place in the record where it timely requested
a trial amendment or argued that the Second Amended Petition should be treated
as such.[4] 
Consequently, Eaton has not preserved this argument for appellate review.  See
Tex. R. App. P. 33.1; Krishnan v. Ramirez, 42 S.W.3d 205, 225 (Tex.
App.—Corpus Christi 2001, pet. denied); Hunt v. Baldwin, 68 S.W.3d 117,
134 (Tex. App.—Houston [14th Dist.] 2001, no pet.); Fincher v. B & D Air
Conditioning & Heating Co., 816 S.W.2d
509, 514 (Tex. App.—Houston [1st Dist.] 1991, writ denied).  For the
foregoing reasons, we overrule Eaton’s first issue.

III.  Striking Certain Summary Judgment Evidence

            In its second
issue, Eaton contends that appellees waived their objections to the Bennett and
Falliaux affidavits—filed as summary judgment evidence by Eaton—by failing to
present their objections and obtain a ruling on them before the trial court
granted summary judgment.  Eaton further contends, therefore, that the trial
court erred in striking portions of the affidavits as summary judgment
evidence.

Appellees actually did file objections to the
affidavits before the summary judgment hearing, but the court did not expressly
rule on the objections until after the hearing.  As with the motion to strike
the Second Amended Petition, the trial judge noted in open court that he had
taken the objections into consideration at the summary judgment hearing and in
signing a written order on the objections was merely “memorializing what the
Court thought” during the earlier hearing.  

In support of their argument that appellees waived
their objections, Eaton cites Texas Rule of Appellate Procedure 33.1(a) as well
as several cases from this court.  Rule 33.1(a) provides that

[a]s a prerequisite to presenting a complaint for appellate
review, the record must show that:  (1) the complaint was made to the trial
court by a timely request, objection, or motion . . . ; and (2) the trial
court:  (A) ruled on the request, objection, or motion, either expressly or
implicitly;  or (B) refused to [so] rule . . . .

Furthermore, each case Eaton cites
involved circumstances wherein the party complaining on appeal failed to
preserve its complaint by making it, or obtaining a ruling on it, in the trial
court.  1001 McKinney Ltd. v. Credit Suisse 1st Boston Mortgage Capital,
192 S.W.3d 20, 31-32 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); Chapman
Children’s Trust v. Porter & Hedges, L.L.P., 32 S.W.3d 429, 435-36
(Tex. App.—Houston [14th Dist.] 2000, pet. denied); Dolcefino v. Randolph,
19 S.W.3d 906, 925-26 (Tex. App.—Houston [14th Dist.] 2000, no pet.); Blan
v. Ali, 7 S.W.3d 741, 748 n.6 (Tex. App.—Houston [14th Dist.] 1999, no
pet.).  None of these authorities apply to the circumstances here, where
appellees made objections in the trial court, obtained a favorable ruling thereon
from the trial court, and make no complaints on appeal.  In its brief, Eaton
offered no other argument or authority to support its contention that the trial
court erred in sustaining the objections to the summary judgment evidence.[5] 
Accordingly, we overrule Eaton’s second issue.

IV.  Grant of Summary Judgment

In its third issue, Eaton contends that the trial
court erred in granting summary judgment favoring appellees because genuine
issues of material fact exist.  Appellees moved for summary judgment on both
traditional and no-evidence grounds.  See Tex. R. Civ. P. 166a(c), (i). 
We will begin by addressing the no-evidence grounds on each of Eaton’s asserted
causes of action or forms of liability:  breach of contract, fraudulent
misrepresentation, negligent misrepresentation, and vicarious liability.  To
defeat a no-evidence motion for summary judgment, the responding party must
present evidence raising a genuine issue of material fact supporting each
element contested in the motion.  Timpte Indus., Inc. v. Gish, 286
S.W.3d 306, 310 (Tex. 2009).  When reviewing a trial court’s grant of such
motion, we consider the evidence presented in the light most favorable to the
party against whom summary judgment was rendered, crediting evidence favorable
to that party if reasonable jurors could, and disregarding contrary evidence
unless reasonable jurors could not.  Id.

A.  Breach of Contract

In order to establish breach of a contract, a
plaintiff must provide evidence of the following elements:  (1) the existence
of a valid contract; (2) performance or tendered performance by the plaintiff;
(3) breach of the contract by the defendant; and (4) damages sustained as a
result of the breach.  Valero Mktg. & Supply Co. v. Kalama Int’l, 51
S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Appellees
asserted in their motion that Eaton could produce no evidence of either the
existence of a contract between Eaton and Jindal United Steel (as alleged in
Eaton’s First Amended Petition) or that Jindal United Steel breached such a
contract.  In response, Eaton made several arguments but ultimately failed to
cite to any specific evidence to prove either existence of the contract or
breach thereof.

First, Eaton referred to additional breach of
contract allegations contained in its Second Amended Petition, which, as
explained above, was not properly filed with the court.  Second, without
citation, explanation, or context, Eaton referred to a supposed stipulation
made during the course of a deposition that “we can call it Jindal.”  Third,
Eaton cited appellees’ motion, in which appellees refer to themselves in places
as “collectively, the Jindal Defendants.”  However, both Eaton’s live petition
and appellee’s motion are specific in regard to the defendant against whom
breach of contract was alleged—Jindal United Steel.  Fourth, Eaton revived
complaints made earlier in the response that appellees had abused the spirit of
the discovery rules; a claim which appellees appear to have abandoned on
appeal.  And lastly, Eaton states:  “The depositions and Exhibits attached
hereto clearly establish there was a contract between Plaintiff Eaton and the
Defendants.”  Attached to the response were approximately 700 pages of undifferentiated
documentation.  Blanket citation to voluminous records is not a proper response
to a no-evidence motion for summary judgment.  See, e.g., Kashif Bros., Inc.
v. Diamond Shamrock
Ref. & Mktg. Co., No. 14-01-00202-CV, 2002 WL 1954852, at *3-5 (Tex.
App.—Houston [14th Dist.] August 22, 2002, pet. denied); Guthrie v.
Suiter, 934
S.W.2d 820, 825-26 (Tex. App.—Houston [1st Dist.] 1996, no writ).[6]
 The trial court did not err in granting summary judgment against Eaton’s
breach of contract cause of action.

B.  Misrepresentations

In its First Amended Petition, Eaton alleged causes
of action against McLaren for fraudulent inducement and negligent
misrepresentation.[7] 
In order to prevail on a claim of fraudulent inducement, a plaintiff must
demonstrate that the defendant made a material misrepresentation that (1) was
either known to be false when made or was asserted without knowledge of its
truth, (2) was intended for the plaintiff to act upon, (3) was relied upon by
the plaintiff, and (4) caused injury to the plaintiff.  Formosa Plastics
Corp. USA v. Presidio Eng’rs and Contractors, Inc., 960 S.W.2d 41, 47 (Tex.
1998).  In their motion for summary judgment, appellees asserted that Eaton
could produce no evidence on any of the elements of fraudulent inducement.  To
prevail on a negligent misrepresentation claim, a plaintiff must show that (1)
the representation in question was made by the defendant in the course of his
business or in a transaction in which he had a pecuniary interest; (2) the
defendant supplied false information for the guidance of others in their
business; (3) the defendant did not exercise reasonable care or competence in
obtaining or communicating the information; and (4) the plaintiff suffered
pecuniary loss by justifiably relying on the representation.  Fed. Land Bank
Ass’n of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991).  In their
motion, appellees alleged that Eaton could produce no evidence that McLaren supplied
false information regarding existing fact for Eaton’s guidance or that
McLaren failed to exercise reasonable care or competence in making his
representations.  See, e.g., Roof Sys., Inc. v. Johns Manville Corp.,
130 S.W.3d 430, 439 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (“The ‘false
information’ contemplated in a negligent misrepresentation case is a
misstatement of existing fact, not a promise of future conduct.”).

In response to the no evidence grounds on these two
causes of action, Eaton stated that:  “Based on the deposition of Defendant
McLaren (Exhibit ‘D’), David Bennett’s deposition (Exhibit ‘K’) and Ryan
Falliaux’s deposition (Exhibit ‘L’), there is ample admissible evidence that
fact issues are present in order to support Eaton’s fraudulent inducement
claims.”  The cited exhibits contain a total of 637 pages (deposition testimony
plus attached exhibits).  As stated above, general citation to voluminous
records is not a proper response to a no-evidence motion for summary judgment. 
See, e.g., Kashif Bros., 2002 WL 1954852, at *3-5; Guthrie, 934 S.W.2d at 825-26.

In contrast to Eaton’s response regarding the breach
of contract cause of action—wherein it failed to even discuss what the cited
evidence allegedly showed—Eaton has additionally made specific factual arguments
regarding the fraudulent inducement and negligent misrepresentation claims. 
However, most of these statements are not accompanied by citation to the
record.  The majority of factual statements that include a record citation
refer to the entirety of McLaren’s deposition (155 pages, of which 78 are
testimonial and 77 are attached exhibits).  The remaining factual assertion,
which includes a record citation, cites “the Exhibits to the depositions of
John McLaren (Exhibit ‘D’), and David Bennett (Exhibit ‘K’), and the business
records of Plaintiff Eaton and the Defendants attached hereto.”[8] 
Again, these general citations were not sufficient to apprise the trial court
of the evidence on which Eaton relied.  See, e.g., Kashif Bros., 2002 WL
1954852, at *3-5; Guthrie, 934 S.W.2d at 825-26.[9] 
Consequently, the trial court did not err in granting summary judgment against
Eaton’s fraudulent inducement and negligent misrepresentation causes of action.

C.  Vicarious Liability

In its First Amended Petition, Eaton alleged
liability against the corporate defendants for McLaren’s conduct through
various forms of vicarious liability and piercing the corporate veil.  As Eaton
acknowledges, however, these forms of liability are not separate, independent
causes of action but depend on the underlying tortfeasor being found liable for
the underlying tort. In this case the underlying torts are fraudulent
inducement and negligent misrepresentation allegedly committed by McLaren.  See
Cox v. S. Garrett, L.L.C., 245 S.W.3d 574, 582 (Tex. App.—Houston [1st
Dist.] 2007, no pet.); Crooks v. Moses, 138 S.W.3d 629, 637-38 (Tex.
App.—Dallas 2004, no pet.); Specialty Retailers, Inc. v. Fuqua, 29
S.W.3d 140, 147 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  Because,
as discussed above, Eaton has failed to establish that there was a material
issue of fact concerning McLaren’s liability, Eaton cannot establish that a
material issue of fact exists regarding its theories of recovery against the
corporate defendants on the fraudulent inducement and negligent
misrepresentation causes of action.

Furthermore, in response to appellees’ specific
no-evidence grounds on these theories of recovery, Eaton (1) again questioned
whether appellees had violated the spirit of the discovery rules (an allegation
apparently abandoned on appeal), and (2) again cited to the entirety of the
depositions of McLaren, Bennett, and Falliaux.  As discussed previously, these
responses were insufficient to defeat the grant of summary judgment.  We overrule
Eaton’s third issue.

We affirm the trial court’s judgment.

 

 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice
Hedges and Justices Yates and Boyce.

 









[1]
The J.G. case is distinguishable from the present case because it
involves a deadline established by the court’s docket control order and not, as
here, by Rule 11 agreement.  915 S.W.2d at 550.  We further question the broad
interpretation of H.B. Zachary by the J.G. court, and instead
favor the more limited reading given by the Dallas Court of Appeals in Carpenter. 
See Carpenter, 2008 WL 384569, at *1-2.





[2]
It is also interesting to note that after the trial court granted the
continuance, the parties themselves entered into three more Rule 11 agreements
to extend pretrial deadlines contained in the first agreement.  Thus, in the
trial court, Eaton itself treated the Rule 11 agreement as still in force after
the continuance was granted.





[3]
Rule 66 reads as follows:

If evidence is objected to
at the trial on the ground that it is not within the issues made by the
pleading, or if during the trial any defect, fault or omission in a pleading,
either of form or substance, is called to the attention of the court, the court
may allow the pleadings to be amended and shall do so freely when the
presentation of the merits of the action will be subserved thereby and the
objecting party fails to satisfy the court that the allowance of such amendment
would prejudice him in maintaining his action or defense upon the merits.  The
court may grant a postponement to enable the objecting party to meet such
evidence.

Tex.
R. Civ. P. 66.





[4]
In a document filed almost four weeks after the summary judgment hearing, Eaton
suggested that it had complied with Rules 63, 64, 65, and 66 in filing the
Second Amended Petition.  However, this document neither requests leave to file
a trial amendment nor explains how Eaton previously complied with Rule 66.





[5]
In its reply brief, Eaton provides additional authority that is likewise
inapplicable to the case at hand.  See, e.g., McConnell v. Southside
I.S.D., 858 S.W.2d 337, 343 & n.7 (Tex. 1993) (holding that a nonmovant
must present in writing any issue that would defeat movant’s right to summary
judgment, and indicating in dicta that to preserve error, the nonmovant must
obtain a ruling on any exception prior to or at the hearing on the motion); Utils.
Pipeline Co. v. Am. Petrofina Mktg., 760 S.W.2d 719, 723 (Tex. App.—Dallas
1988, no writ) (holding that a docket sheet entry indicating that an objection
to a summary judgment affidavit was sustained was not sufficient to exclude the
affidavit from consideration on appeal).

Also in the reply brief, Eaton argues that an
appellate court’s review of a summary judgment is limited to “the evidence that
was before the trial court when it ruled, absent an indication that the trial
court did not consider certain evidence for purposes of that ruling,” citing Plotkin
v. Joekel, 304 S.W.3d 455, 485-86 (Tex. App.—Houston [1st Dist.] 2009, pet.
denied).  As explained in the text above, in signing the written order
regarding the affidavits, the trial judge here expressly indicated that he had
considered the objections to the affidavits at the time of the hearing and in
sustaining the objections was merely memorializing what had occurred at the
prior hearing.  This is a clear indication that in granting the motion for
summary judgment, the court did not consider the affidavits, and thus, this
court should not consider the affidavits in its review of that order.





[6]
It is further worth noting that during the hearing on the motion, both the
trial judge and appellees’ counsel questioned the propriety of blanket citation
such as offered by Eaton in its response to the motion.





[7]
At various places in its pleadings, Eaton referred to its fraud claim as either
“fraudulent inducement” or “fraudulent misrepresentation.”  There is no
indication, however, that in doing so it intended to raise any cause of action
other than that described by the elements listed herein.





[8]
It is not entirely clear which documents Eaton intended to cite.  Fairly
extensive business records were attached as exhibits to the two referenced
depositions, which were themselves attached to the response.





[9]
Interestingly, in its response in the trial court, Eaton did not cite or even
refer to Falliaux’s or Bennett’s affidavit in response to the no-evidence
grounds on either breach of contract, fraudulent inducement, or negligent
misrepresentation.  Furthermore, in its appellate briefing, Eaton does not
contend that the affidavits themselves were sufficient to defeat summary
judgment on these causes of action, either in their original form or in their
redacted form taking into consideration the sustaining of appellees’ objections
thereto.